**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SANDIE P. CHU,**<br><br>           Plaintiff,<br><br>    vs.<br><br>**PATRICK DONAHOE, POSTMASTER GENERAL,**<br>**UNITED STATES POSTAL SERVICE,**<br><br>           Defendant. | **Case No.: 12-CV-2660 YGR**<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |

Plaintiff Sandie P. Chu ("Plaintiff") brings this action against Defendant Patrick Donohoe in his capacity as Postmaster General of the United States Postal Service ("Defendant") for employment discrimination. Plaintiff alleges claims for race and national origin discrimination based upon her involuntary reassignment/reduction in class.

On March 25, 2013, this Court issued its Order Providing *Rand* Summary Judgment Notice and Setting Briefing Schedule giving notice to *pro se* Plaintiff regarding her burden in opposing summary judgment and what she must do to oppose it. (Dkt. No. 38.) Thereafter, on April 30, 2013, Defendant filed his Motion for Summary Judgment on the grounds that Plaintiff cannot establish a prima facie case of discrimination and has no evidence of pretext. (Dkt. No. 40.) Plaintiff filed a response to the motion and responsive separate statement on May 28, 2013. (Dkt. No. 43, 44.) Defendant filed his reply on June 11, 2013, including a Declaration of Leticia Capristo which offered additional evidence in support of the motion for summary judgment. (Dkt. Nos. 44 and 45.) The Court continued the hearing on the summary judgment motion and set a schedule for further briefing, in order to allow Plaintiff to respond to the additional evidence. (Dkt. No. 47.) Plaintiff thereafter

filed a further response on July 9, 2013 (Dkt. No. 48). Defendant filed its further response on July 16, 2013. (Dkt. No. 49.) The Court heard argument on July 23, 2013. Finally, Plaintiff filed an additional response and "Supplemental Evidence in support of Opposition" on the day of the hearing, July 23, 2013, which the Court considered despite its being filed late and without leave of court. (Dkt. No. 51.)

Having carefully considered the papers submitted, the admissible evidence, the arguments of the parties and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion for Summary Judgment.

## BACKGROUND

Plaintiff is a Chinese woman from Burma.[1] She started her career with the Postal Service on June 6, 1998, and worked at the Postal Service's San Francisco Processing & Distribution Center ("SFP&DC") as an automation clerk, operating a mail sorting machine, for about 12 years. On February 25, 2009, the Postal Service sent a letter to Plaintiff notifying her that she would be "excessed" from the clerk job category (or "craft") and/or SFP&DC. This "excessing" or reduction of workforce was to be done pursuant to the terms of the collective bargaining agreement (the "National Agreement") in effect between the Postal Service and the union representing the categories of Postal Service employees to which Plaintiff belonged at that time. The February 25, 2009 letter stated:

> As a result of the reduction of workload, it will be necessary to reduce the number of career full-time Level 6 full-time clerks at the San Francisco bid installation. You have been identified as a junior Level 6 full-time clerk at the bid installation. Therefore, in accordance with the provisions of Article 12.5.C.5 of the National Agreement, it will be necessary to excess you from the craft and/or bid installation effective April 25, 2009.
> If you are reassigned to a residual/withheld position in the clerk craft in another bid installation, you will be reassigned with your seniority… Additionally, you may elect to change to a Part Time Regular in lieu of being reassigned.

---

[1] The facts stated in this background summary are undisputed by the parties unless otherwise noted. References to "SSUF" are to Defendant's Separate Statement of Undisputed Facts, Plaintiff's response thereto, and evidence cited therein. (*See* Dkt. No. 40-1, 44.)

2

(Falk Dec., Dkt. No. 40-2, Exh. A [hereinafter "Chu Depo."] at 73:22-25; 74:1-2, and Exh. 1.) Article 12.5.C of the National Agreement is titled "Special Provisions on Reassignments." (SSUF 50-51; Falk Dec. at ¶ 4, Exh. B.) Article 12.5.C.5 sets out the procedure for "Reduction in the Number of Employees in an Installation Other Than by Attrition," and details the process for identifying "excess" employees, then reassigning them on the basis of seniority, both at their current work location and other facilities. The letter went on to explain that if Chu was reassigned to a withheld assignment in another craft, the position would be full-time status but she would begin a new seniority period. (*Id.*) If the reassignment was within the same "bid installation," she would "be returned at the first opportunity." (*Id.*) If she was reassigned outside the bid installation, she could submit a request to retreat "to the first available vacancy in your former craft and installation." (*Id.*)

On April 10, 2009, the Postal Service sent Plaintiff another excessing notice with the subject line "Employee Notification, Involuntary Reassignment – Outside the Installation." (SSUF 6, 7, 49; Chu Depo., at 75:11-16, Exh. 2.) The April 10, 2009 letter stated:

> This is to advise you that due to the reduction of mail, you will become excess to the needs of this installation and you will be involuntarily reassigned outside the San Francisco Bid Installation. [¶] You have the option of changing to part-time regular clerk in lieu of the above voluntary reassignment, [*sic*] should you not elect to change to the part-time regular position, your involuntary reassignment effective date will be announced shortly.

(*Id.*) In the April 10, 2009 letter, Plaintiff was given two choices: either stay at the SFP&DC as a part time regular clerk, or be involuntarily reassigned to a full time position in a different craft. (SSUF 7; Chu Depo., 77:3-20, Exh. 2.) The letter also advised Plaintiff to "consider the hours available to part-time regulars in your present installation before you make a decision." (*Id.*) Along with the letter, Plaintiff received a "Preferencing Selection Form," listing the positions that were available at that time if opted to be reassigned rather than staying at the SFP&DC as a part time regular clerk. (Chu Depo. Exh. 3, 4; *see also* Plaintiff's Evidence In Opposition, Attachment A at 3-

3

6.)[2] The Preferencing Selection Form instructed Plaintiff to rank the available positions in which she was interested, and that positions would be awarded based on seniority. (*Id*.) The Preferencing Selection Form shows that Carrier, Mail Handler, and Custodian positions were available. (*Id*.) The hours and days off listed next to each position showed full-time positions at other facilities. (*Id*.)

The Preferencing Selection Form included an "Employee Options" form which required Plaintiff to indicate her choice and return the form no later than April 25, 2009. (Chu Depo., Exh. 3, *see also* Attachment 2 to Plaintiff's evidence.) The Employee Options form also stated as follows:

> As an excess full-time clerk, in the Clerk Craft in [sic] 200 man year installation you have the option to change to part-time regular clerk, in lieu of *involuntary reassignment to the San Francisco Bid Installation as a full-time mailhandler*.
>
> CLERK CRAFT EMPLOYEES: Before being *involuntarily reassigned to the mailhandler craft* at the San Francisco Bid Installation, you are required to file a written request to be returned to the first vacancy in the same level, lower level(s) or higher level(s) craft, or occupational group, in the San Francisco Bid Installation.

(*Id.*, emphasis added).

Plaintiff reviewed the Preferencing Selection Form and determined that there were no available clerk or carrier positions in San Francisco. (SSUF 14, 15.)[3] She testified that she understood that she was eligible to select any of the positions on the Preferencing Selection Form, including the Mail Handler and Carrier positions that were available in locations outside of San Francisco, but she did not want to travel outside of San Francisco for work. (SSUF 15-17, 20.) She

---

[2] There are two different Preferencing Selection Forms in the record (*see* Chu Depo., Exh. 3 and 4), with different opening and closing dates listed and slightly different listings of positions. The most significant difference seems to be that the earlier form (Exh. 3) listed a clerk craft position in Union City, while the later one did not. Further the "Employee Options" form lists yet another deadline, April 25, 2009. (Chu Depo., Exh. 5.) However, these discrepancies are immaterial, ultimately, since neither party argues that the return date was significant, that Plaintiff did not return her form on time, or that she would have elected a clerk position in Union City.

[3] Plaintiff claims, without objection, that none of the available positions listed on her Preferencing Selection Form were in San Francisco; although the location for several mail handler positions appears to be "SF BMC" that location is actually in Richmond, California.

4

also understood that the Carrier positions required passing additional examinations, and that her seniority date would be reset if she selected a position in the Carrier or Mail Handler crafts. (SSUF 9, 15, 19; Chu Depo. 82:1-88:15; 115:8-116:10 [chose to become a part time regular clerk to avoid a longer commute, additional training, and having her seniority date be reset].) On April 15, 2009, Plaintiff submitted her Preferencing Selection Form, checking the box next to "I wish to remain in this installation as a part-time regular and a 200 man year installation. I understand that I may work less hours than I did as a regular employee." (SSUF 24-26.) Thereafter, Plaintiff was assigned as a part-time regular clerk and her hours were reduced to four hours per week. (SSUF 33.)[4]

On July 13, 2009, Plaintiff filed an administrative complaint with the Equal Employment Opportunity (EEOC) office alleging discrimination on the basis of race, color, and national origin. (SSUF 34.) Specifically, Plaintiff alleged that the Manager of Human Resources, Harriet White, gave her own niece an unfair advantage over higher seniority Asian clerks, including Plaintiff. Plaintiff alleged that White discriminated against Plaintiff by not giving Asian clerks an equal opportunity for involuntary reassignment to the Mail Handler craft. *Id*.

In those EEO proceedings, an administrative law judge issued a denial of Plaintiff's claim in October of 2011, finding that Plaintiff failed to establish that any discrimination occurred. (*See* Complaint, Exh. A.) Both Plaintiff's EEO appeal and her request for reconsideration were denied. *Id*. Plaintiff filed the instant lawsuit on May 23, 2012.

**APPLICABLE STANDARD**

Summary judgment is appropriate when a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable juror to find for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-249 (1986). A fact is "material" if it might affect the outcome of the case. *Id.* at 248. In considering a motion for

---

[4] Plaintiff worked as a part-time regular clerk until 2010, when she bid on and was awarded a window clerk position at the Lakeshore station. (SSUF 38.) Plaintiff has since been excessed three times, and most recently was assigned to work as a Carrier at the San Francisco-Steiner Street Station location. (SSUF 39-47.)

5

summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 865, 867 (9th Cir. 2008). Summary judgment may be granted in the moving party's favor where the non-moving party fails to produce any evidence on any element of a claim on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 325; *Maffei v. N. Ins. Co. of New York*, 12 F.3d 892, 899 (9th Cir. 1993). Once the moving party points out an absence of evidence, the non-moving party must come forward with specific evidence to establish a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Maffei*, 12 F.3d at 899.

Discrimination claims are analyzed using a burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). There is a presumption of unlawful discrimination if plaintiff can establish a prima facie case by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802-04. Defendant need not persuade the court that it was actually motivated by the proffered reason, but must provide a legally-sufficient explanation to justify a judgment in its favor. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). Once the defendant provides a legitimate, non-discriminatory reason for its actions, the presumption of discrimination "simply drops out of the picture," *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 (1993), and the burden shifts back to plaintiff to demonstrate that the employer's stated reason was a "pretext" or cover-up for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802-04. Plaintiff can prove pretext either: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000).

**DISCUSSION**

**I.     NO ADVERSE ACTION OR DIFFERENTIAL TREATMENT**

Defendant first moves for summary judgment on the grounds that Plaintiff cannot establish a prima facie case of discrimination.  First, Defendant argues, Plaintiff cannot show that any adverse action was taken against her.  She was reassigned to a part-time position because of the excessing procedures consistent with the National Agreement, and when given a choice between involuntary reassignment to a full-time position in a different facility or remaining at the SFP&DC facility as a part-time regular clerk, she chose the latter option.  Second, Defendant contends that Plaintiff has no evidence to show any similarly situated individual outside her protected class was treated more favorably in the April 2009 excessing, or was permitted to stay at SFP&DC (or the San Francisco Bid Installation) as a full time clerk.

Plaintiff argues in opposition to the motion that she has evidence to establish a prima facie case because there was an adverse action taken on account of her race and national origin.  Specifically, Plaintiff contends that, in the excessing process, she was denied a full-time mail handler position in the San Francisco Bid Installation in favor of Desiree Williams, a similarly situated person in the clerk craft who had less seniority than Plaintiff and who is black.  At the time of the excessing at issue, Desiree Williams was assigned to SFP&DC and had a seniority date of August 29, 1998 (*i.e.,* less seniority than Plaintiff).

The Court finds that Plaintiff has failed to offer evidence of a prima facie case to avoid summary judgment.  Plaintiff concedes that excessing was permitted in accordance with the National Agreement.  She also concedes that the option letter gave her the choice of switching to a regular part-time position at her location, or being reassigned to a full-time position from among those listed on the Preferencing Selection Form.  The completed form shows that she selected the part-time regular position at the SFPD&C location.  (SSUF 24, Chu Depo., Exh. 5.)  While Plaintiff now argues that she wanted a full-time mail handler position at a San Francisco facility, she selected the part-time regular position from the options she was offered.  Those options apparently included

7

1 "involuntary reassignment to the San Francisco Bid Installation as a full-time mailhandler," as stated
2 on the Employee Options Form. (Chu Depo., Exh. 5.)

3       Regardless, Plaintiff testified at her deposition that she evaluated the options available to her
4 and chose to remain at the SFP&DC as a part-time clerk. Rather than be involuntarily reassigned to
5 a different craft or location, she elected a part-time clerk position at the same facility in order to
6 avoid a longer commute, additional training, and having her seniority date be reset. (SSUF 15-23;
7 Chu Depo. 82:1-88:15; 115:8-116:10.) Thus, the evidence would not support a finding that Plaintiff
8 was subjected to an adverse employment action. Plaintiff chose the option she wanted, based upon
9 factors that were important to her at the time. She cannot now claim that her reassignment to the
10 part-time regular position was an adverse action by Defendant.

11       Even if Plaintiff's reassignment to the part-time regular position somehow could be
12 considered an adverse employment action, Plaintiff does not marshal evidence to support a claim of
13 differential treatment on account of race. Plaintiff contends that Williams was treated more
14 favorably on account of her race. Plaintiff's only evidence on this point is an inadmissible,
15 conclusory statement in her own declaration that Williams was given preferential treatment.[5]
16 Plaintiff does not have any apparent personal knowledge or documentary evidence on which she
17 bases this statement.

18       Moreover, and contrary to Plaintiff's contentions in this regard, the Postal Service submits
19 evidence showing that Williams was in a lower seniority group than Plaintiff, and was not given the

---

[5] Plaintiff's EEO Complaint dated June 29, 2009, states in more detail that Harriet White, the Human Resources director in charge of the SFP&DC excessing, had closed residual bids in such a way as to favor "her niece," an African-American woman. White is alleged to have put the niece in a higher group for purposes of maintaining retreat rights back to a full time clerk craft position, while putting Plaintiff and other Asian employees in the clerk craft in a "second impacted group" who were given no options in the San Francisco bidding area, despite their higher seniority. (Chu Depo, Exh. 10.) Plaintiff has not offered any evidence to support these allegations in opposition to the motion.

The Investigative Summary, attached to Plaintiff's Continued Opposition (Dkt. No. 48, Exh. A), indicates that White's niece was not *Desiree* Williams, about whom Plaintiff complained, but *Jennifer* Williams. (*Id.* at p.14.) Jennifer Williams worked at a different location from Plaintiff and was promoted from Mail Handler to Associate Supervisor in early January 2009. (*Id.*)

option to remain in her craft, part-time, as Plaintiff was. (Capristo Dec., ¶ 4, Exh. B.)[6] Williams was then involuntarily reassigned to another job in another craft (Mail Handler) at the "ISC" location, with a resulting change in her seniority date. (Capristo Dec. ¶ 4, Exh. A.)[7] This is, on its face, the same option as was stated on Plaintiff's Employee Options form – an option she did not select. (Chu Depo., Exh. 5 ["involuntary reassignment to the San Francisco Bid Installation as a full-time mailhandler"].) Plaintiff offers no evidence to contradict this.[8]

In sum, it is true that the evidence submitted by the Postal Service indicates that Williams was reassigned to a mail handler position at the ISC location, and assignment Plaintiff now says that she wanted and believes is "better" than the one she selected or was offered. However, the evidence does not show that Williams was treated more favorably than Plaintiff, much less any that the reasons Williams was treated differently from Plaintiff had to do with race. Williams was reassigned to a position in the Mail Handler craft and lost seniority. Plaintiff was presented a variety of options in her Preferencing Selection Form and Employee Options Form. She elected to stay in the clerk craft and the SFP&DC facility as a part-time regular. There is no evidence in the record to suggest that the positions offered in that excessing process were anything other than consistent with the terms of the governing National Agreement, that the reassignment Williams received was "better" than the options presented to Plaintiff, or that the reassignments were not made without any consideration of race or national origin. Consequently, Plaintiff has not offered evidence to support a prima facie

---

[6] Williams was initially offered the option of staying in her current craft on a part-time regular basis, but then received a letter notifying her that, as a junior employee she was not entitled to that option and it had been extended to her in error. (Capristo Dec. ¶ 4, Exh. B.)

[7] Though no evidence is submitted on this point, the ISC location is apparently within the San Francisco Bid Installation.

[8] Further, the Postal Service also submits evidence that Plaintiff's union challenged the overall method of implementation of the National Agreement as being unfair from a seniority standpoint, but that challenge was unsuccessful. (Capristo Dec., ¶ 6, Exh. C.) Consequently, to the extent Plaintiff is arguing that the excessing process did not give her the options to which she would have been entitled with her level of seniority, that argument is apparently foreclosed by the results of the grievance process, which are not challenged here.

case of discrimination based upon race or national origin, and summary judgment in favor of Defendant is appropriate.

## II.   NO EVIDENCE OF PRETEXT

Even if the Court were to assume that Plaintiff could establish a prima facie case of discrimination, summary judgment is appropriate because Plaintiff does not put forward any evidence of pretext. Once Defendant puts forward evidence of a legitimate non-discriminatory reason for Plaintiff's reassignment – here, the excessing process under the National Agreement – the burden shifts to Plaintiff to offer either direct or indirect evidence giving rise to a reasonable inference that Defendant's reasons are actually a pretext for discrimination.

Plaintiff offers no direct evidence of pretext. Plaintiff could not point to discriminatory statements related to race made by anyone at the Postal Service. (SSUF 52; Chu Depo. at 69:12-14; SSUF 53, 57; Chu Depo. at 92:10-20.) She testified that she never felt discriminated against by the Postal Service in the 12 years she was employed prior to being excessed in 2009, and she did not believe that she was denied the reassignment of her choice because of her race, color or national origin. (*Id.*) Plaintiff concedes that she did not believe that the excessing procedure, in which she elected to remain at the SFP&DC as a part time clerk instead of being involuntarily reassigned to another facility and/or craft, was discriminatory. (SSUF 57, 58; Chu Depo. at 92:10-20.) Instead, the basis for her claim of discrimination is that her seniority should have entitled her to the position offered to Williams. (*See* Oppo. at 4:22-27.)

Plaintiff further contends, as indirect evidence of pretext, that Defendant "falsified" or "altered" certain documents. The allegedly "altered" documents were exhibits produced during the investigation of Plaintiff's EEO complaint, compiled to show which employees were reassigned as Mail Handlers in San Francisco in 2009. (SSUF 29; Chu Depo. at 95:20-101:15, Exh. 6 [which is also Exhibit C to Plaintiff's evidence in opposition.) Plaintiff argues that the seniority list is altered and calls her "complainant" instead of calling her by her name. (Plaintiff's Continuing Oppo, Dkt. No. 48, at 7-10.)

10

In order to show pretext indirectly, a plaintiff must put forth "specific and substantial evidence challenging the credibility of the employer's motives." *Vazquez v. City of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *see also Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (plaintiff's "subjective personal judgments of her competence alone" are insufficient to meet the burden).  Here, Plaintiff's "falsification" argument seems to miss the point that these documents were generated for the EEO hearing, which took place after Plaintiff filed her EEO complaint.  The fact that Plaintiff is identified on the document as "complainant" rather than by her name is of absolutely no import.

Plaintiff also argues that the cutoff for offering options versus involuntary reassignment is indirect evidence of discrimination.  (Chu Depo., Exh. 6.)  The 29 most junior employees were involuntarily reassigned to other positions.  Ms. Williams was in that group of 29.  Plaintiff's seniority was above that cutoff.  Again, the Court does not see how this evidence could suggest to any reasonable jury that Defendant's reassignment decisions were actually a pretext for discrimination.  To the contrary, the list of those involuntarily reassigned (the option Plaintiff declined) shows that other persons with Asian surnames were involuntarily assigned as Mail Handlers, which tends to suggest that the cutoff line for involuntary reassignment had nothing to do with preferring non-Asian employees over Asian-employees.

In addition, Plaintiff submits a document from the Mail Handlers Union dated February 4, 2009, stating that certain listed mail handler positions were no longer being withheld for the "96 Junior Clerk Involuntary Reassignment Impact."  (Plaintiff's Evidence, Exh. D, Dkt. No. 43.)  Based on this document, she argues that the fact that Williams and others were ultimately reassigned to mail handler positions shows that there is an inconsistency in the statements about what positions were available, undermining the credibility of Defendant's reasons for Williams' reassignment to a mail handler position.  First, the evidence does not suggest that any one of the jobs listed on the Mail Handlers Union document include the position to which Williams (or any of the other most junior

11

clerk craft employees) was reassigned.[9]  Second, given that the Employee Options form sent to Plaintiff indicated on its face that involuntary reassignment to a mail handler position was one of the options available to her, there is nothing suspicious about any discrepancy between the Mail Handlers Union letter and the fact that Williams was reassigned to a mail handler position.

In short, the evidence here is that that Defendant reassigned Plaintiff to a part-time position in her same craft, same location and same seniority rather than reassigning her to a position as a full-time mail handler in another location, with a loss of seniority.  Plaintiff has been given ample opportunity to submit evidence, and has failed to offer such evidence as would give rise to a reasonable inference that action was an adverse action or that it was based upon discriminatory motives or upon anything other than her own election to accept such a position.

Accordingly, the Motion for Summary Judgment is **GRANTED**.  Judgment shall be entered in favor of Defendant.

This terminates Docket No. 40.

**IT IS SO ORDERED.**

Date: March 3, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9] The Court notes that the "Job Id." number listed for Desiree Williams in Plaintiff's original Exhibit E does not match any Job Id. number on Plaintiff's Exhibit D (Dkt. No. 43.)

12